**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF KENTUCKY**
**LEXINGTON DIVISION**

**IN RE**

| | |
|---|---|
| **CAMBRIAN HOLDING COMPANY, INC.** | **CASE NO. 19-51200** |

**DEBTOR**

| | |
|---|---|
| **ELLEN ARVIN KENNEDY, LIQUIDATING TRUSTEE** | **PLAINTIFF** |

| | |
|---|---|
| **V.** | **ADV. NO. 21-5051** |

| | |
|---|---|
| **ESTATE OF ROY CAMPBELL** | **DEFENDANT** |

**MEMORANDUM OPINION**

The Plaintiff Ellen Arvin Kennedy, Liquidating Trustee for the Cambrian Liquidating Trust, filed a complaint seeking to avoid a transfer made to the Defendant, the Estate of Roy Campbell, pursuant to 11 U.S.C. § 547 (Count I), § 548 (Count II), and § 549 (Count III), and to recover the transfer for the bankruptcy estate pursuant to § 550 (Count IV). [ECF No. 1.] The Trustee moved for summary judgment on Counts I and IV because the transfer is avoidable under § 547(b) and recoverable under § 550(a). [ECF No. 11.]

The Defendant objects and seeks a summary judgment that the transfer is not avoidable under § 547(b) because it was made in the ordinary course of business with the Debtor pursuant to § 547(c)(2). [ECF Nos. 15, 16.] A hearing was held on January 20, 2022, and the matter taken under submission.

The Trustee's Motion for Summary Judgment is granted and the Defendant's Motion for Summary Judgment is denied.

1

I.     **Undisputed Facts.**

A.     **The Transfer.**

The transfer is a $49,841.95 payment (the "Transfer") made by the Debtor Perry County

Coal LLC to the Defendant on April 15, 2019.  [ECF Nos. 1, 11-2.]  The Transfer was made

within the ninety days preceding the Debtor's petition date of June 16, 2019.  [*See* Case No. 19-

51217, ECF No. 1; *see also* ECF No. 10 at ¶ 3.]  The Debtor was insolvent when the Transfer

was made.  [ECF No. 11-1 ("Affidavit of Liquidating Trustee").]

B.     **The Coal Lease Agreement**.

The Transfer was made pursuant to a coal lease agreement dated December 3, 2003,

between the Debtor and Roy Campbell.[1]  [*See* ECF No. 1 at Ex. A ("Lease"); *see also* ECF No.

10 at ¶ 4.]  The Lease allows the Debtor to mine coal on Campbell's property in exchange for

periodic royalty payments.  [ECF No. 1, Ex. A at ¶ 1.]  The Lease provides the Debtor will pay

Campbell a tonnage royalty based on the coal mined "on or before the 25th day of the month

following the mining, removal and sale of the coal." [*Id*. at ¶ 5.]  The Lease also includes an

annual minimum royalty during the initial 10-year term of the Lease with a right of recoupment

in subsequent years if the coal mined is less than the minimum tonnage in the Lease.  [*Id*. at ¶ 6.]

C.     **Payment History.**

The Defendant provided copies of checks issued by the Debtor to the Defendant dated

August 2016 through April 2019 and stubs that summarize the invoices paid by each check for

coal mined during that same period to evidence the parties' billing and payment history.  [ECF

No. 16-2.]  The Trustee moved to strike these documents because they were not timely produced

---

[1] Campbell died in November 2010.  June Ison and Paul Michael Ison were appointed co-executors of his estate.
[ECF No. 15 at 2.]

in discovery.  [ECF No. 22.]  The Trustee's request was denied at the January 20 hearing.  [ECF

No. 26.]

The documents are checks and stubs sent by the Debtor to the Defendant.  The Trustee

did not argue that they are inadmissible or inaccurate.  A chart summarizing the information

included in these documents is attached as Exhibit A and incorporated herein.

## II.     The Trustee is Entitled to Summary Judgment.

Summary judgment is appropriate if "there is no genuine issue as to any material fact"

and "the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a) (incorporated

FED. R. BANKR. P.  7056).  A court must consider cross-motions for summary judgment

separately on the merits as each party bears the burden to show there are no genuine issues of

fact.  *Menninger v. Accredited Home Lenders (In re Morgeson)*, 371 B.R. 798, 800–01 (6th Cir.

B.A.P. 2007).

It is the Trustee's burden to show that the Transfer is avoidable under § 547(b).  11

U.S.C. § 547(g).  It is the Defendant's burden to prove that the Transfer is not avoidable because

it was made in the ordinary course of business under § 547(c)(2).  *Id*.

The Trustee has met her burden to show the Transfer is avoidable.  The Defendant has

not presented evidence that shows the Transfer was made in the ordinary course of business.

### A.     The Transfer is Avoidable Under § 547(b).

Section 547(b) provides that a trustee may avoid a transfer made in the ninety days

preceding the petition date if five conditions are satisfied: (1) the transfer benefits a creditor; (2)

the transfer was made on account of antecedent debt; (3) the transfer was made while the debtor

was insolvent; (4) the transfer was made within ninety days before the petition was filed; and (5)

the transfer enables the creditor to receive a larger share of the estate than if the transfer had not

3

been made.  11 U.S.C. § 547(b); *see also Luper v. Columbia Gas of Ohio (In re Carled, Inc.)*, 91

F.3d 811, 813 (6th Cir. 1996).  The record reflects, and the Defendant did not dispute, that all

five elements under § 547(b) are satisfied.  [*See generally* ECF Nos. 1 (Complaint), 8 (Amended

Answer), 10 (Defendant's Response to Request for Admissions); 11-1 (Affidavit of Liquidating

Trustee).]

The only defense raised by the Defendant is the exception to a preference action for

transfers made in the ordinary course of business pursuant to § 547(c)(2).

### B.    The Transfer was Not Made in the Ordinary Course of Business.

A trustee may not avoid any transfer:

(2) to the extent that such transfer was in payment of a debt incurred by the debtor
in the ordinary course of business or financial affairs of the debtor and the
transferee, and such transfer was:

(A) made in the ordinary course of business or financial affairs of the debtor and
the transferee; or

(B) made according to ordinary business terms.

11 U.S.C. § 547(c)(2).  To prove the Transfer was made in the ordinary course of business, the

Defendant must show either (1) the debt and the payment were made in the ordinary course of

business between the parties (the subjective prong), or (2) the payment was made in the ordinary

course of business under standards prevailing in the industry (the objective prong).  *Spradlin v.

East Coast Miner, LLC (In re Licking River Mining, LLC)*, 603 B.R. 336, 394 (Bankr. E.D. Ky.

2019).

The Defendant did not submit evidence of industry standards to support an objective ordinary course defense.[2]  The Defendant relies on the subjective prong of § 547(c)(2) and argues that the Transfer was made in its ordinary course of business with the Debtor.  The subjective prong examines the parties' conduct to determine whether the transactions between the debtor and the creditor before and during the preference period are consistent.  *Kaye v. Agripool, SRL* (*In re Murray, Inc.*), 392 B.R. 288, 295 (6th Cir. B.A.P. 2008).  Factors to consider include the history of the parties' dealings, timing, the amount at issue, and the circumstances of the transaction.  *Id.*

The Debtor's relationship with the Defendant is based on the Lease.  The Lease required the Debtor to make tonnage royalty payments on or before the 25th day of the month following the mining, removal, and sale of the coal.[3]  The Transfer was made on April 15, 2019.  It paid eleven invoices dated February 23, 2018, through December 31, 2018, all of which were past due by several months pursuant to the terms in the Lease.

Untimely payments are generally considered outside the ordinary course of business.  *Carrier Corp. v. Buckley (In re Globe Mfg. Corp.)*, 567 F.3d 1291, 1298 (11th Cir. 2009).  But a creditor may present evidence to rebut a presumption that late payments are out of the ordinary course if the creditor can show that late payment is the regular course of dealing between the parties.  *Id.  See also Murray,* 392 B.R. at 295 (late or irregular payments may be within the

---

[2] The Defendant suggested there is another creditor with a similar payment history at the January 20 hearing.  The Debtor's relationship with two creditors does not create an industry standard.  Further, summary judgment is the appropriate time to present such evidence in support of this defense. *See In re Tingle*, 594 B.R. 396, 404–05 (Bankr. E.D. Ky. 2018).

[3] The requirement to pay an annual minimum royalty expired before the time period examined in this analysis, although the right to recoup may still apply.

5

ordinary course of business if consistent with the dealings of the parties). The Defendant essentially shows the contract was altered by the course of dealing.

The Defendant claims the Debtor typically paid the royalties late and the Transfer is consistent with this course of dealing. To determine whether the Transfer is consistent, the Defendant must first establish a baseline course of dealing. *Wiscovitch-Rentas v. Villa Blanca VP Place LLC (In re PMC Mktg Corp.)*, 543 B.R. 345, 356-57 (1st Cir. B.A.P. 2016); *Cruickshank v. George R. Roberts Co. (In re Boston Grand Prix, LLC)*, 599 B.R. 448, 472 (Bankr. D. Mass. 2019); *Conti v. Sampson-Bladen Oil Co., Inc. (In re Clean Burn Fuels, LLC)*, No. 11-80562C-7D, 2014 WL 2987330, at *5–6 (Bankr. M.D.N.C. July 1, 2014); *Davis v. Barcom, Inc. (In re Quebecor World (USA))*, No. 08-10152-JMP, 2012 WL 37547, at *4 (Bankr. E.D. Tenn. Jan. 9, 2012). The baseline is used to determine whether the disputed transfer is consistent with prior transfers. *Id*. If a creditor fails to establish a baseline, "the inquiry ends as the court is unable to ascertain the subjective standard of comparison." *Clean Burn Fuels, LLC*, 2014 WL 2987330 at *6.

The Defendant's argument that the Debtor always paid the invoices late does not create a baseline without some proof of a consistent pattern of late payments. *See PMC Mktg. Corp.*, 543 B.R. at 359; *see also Cox v. Health Alliance (In re EIY Co.)*, Bankr. No. 12-72028, Adv. No. 13-7019, 2014 WL 793691, at *4 (Bankr. C.D. Ill. Feb. 26, 2014) ("Late payments can be ordinary course payments when a consistent, regular pattern of late payments is shown."); *The Official Unsecured Creditors' Comm. of Ed Jefferson Contracting, Inc. v. Ford Motor Credit Co. (In re Ed Jefferson Contracting, Inc.)*, 224 B.R. 740, 745 (Bankr. E.D. Mo. 1998) (routinely paying a creditor late does not establish consistency in the payment period). The payment history is not consistent, but erratic.

The Debtor made three payments to the Defendant in 2016, only one payment in 2017, two payments in 2018, and then only one payment in 2019 (the Transfer).  The checks randomly satisfied multiple different invoices.  Two checks paid single invoices.  Most checks covered multiple invoices, but the number of invoices paid at once was never the same.  A check issued on February 9, 2018, paid 5 invoices issued over a 3-month period, but a check dated just four months later paid 6 invoices issued over an 8-month period.   The Transfer paid 11 invoices issued over an 11-month period, or double the invoices paid by any prior check.

All the invoices paid were past due, but the range varied widely.  The Debtor paid invoices that were less than 6 months old in 2016 and 2017.  But in 2018, the Debtor paid invoices that had been due for over a year.  The Transfer paid some invoices that were less than 6 months old and others that were over a year old.

The payment history is too irregular to establish a pattern for a baseline to compare to the Transfer.  The irregularity might be explained by co-executor's testimony that the Defendant usually had to contact the Debtor to get paid.  [ECF No. 16-3 at ¶ 5.]  But this explanation supports the conclusion that the Transfer was not in the ordinary course.  Payment that results from collection activity by the Defendant is an underlying reason for the preference statute.  *See Murray*, 392 B.R. at 295 (actions taken to collect a debt are relevant to the ordinariness of the payment).

The Defendant has not established a baseline from which to compare the Transfer.  The Defendant therefore cannot prove that the Transfer was made in the ordinary course of dealing under § 547(c)(2).  The Transfer is avoidable by the Trustee.

7

III.   **Conclusion.**

Based on the foregoing, it is ORDERED:

(1) the Plaintiff's Motion for Summary Judgment on Counts I and IV of the Complaint is GRANTED and the Defendant's Motion for Summary Judgment is DENIED.

(2) The Transfer is avoidable under § 547(b) and recoverable under § 550(a).

(3) Counts II and III seeking to avoid and recover the Transfer under § 548 and § 549 are DISMISSED as moot.

(4) A separate judgment consistent with this Memorandum Opinion will be entered concurrently hereto.

8

---

**The affixing of this Court's electronic seal below is proof this document has been signed by the Judge and electronically entered by the Clerk in the official record of this case.**



Signed By:
*Gregory R. Schaaf*
**Bankruptcy Judge**
**Dated: Friday, January 28, 2022**
**(grs)**

EXHIBIT A

| | Invoice Date | Invoice Amount | Check Date | Check No. | Check Amount | Time Elapsed Between Invoice Date and Check Date |
|---|---|---|---|---|---|---|
| **2016 JAN** | | | | | | |
| **FEB** | | | | | | |
| **MARCH** | | | | | | |
| **APRIL** | 4/25/2016 | $49,559.32 | 8/26/2016 | 82210 | $49,559.32 | 4 months |
| **MAY** | | | | | | |
| **JUNE** | | | | | | |
| **JULY** | 7/5/2016 | $3,731.92 | 10/20/2016 | 82506 | | 3 months |
| | 7/14/2016 | $100.00 | 1/27/2017 | 82962 | $100.00 | 6 months |
| | 7/25/2016 | $408.08 | 10/20/2016 | 82506 | $4,140.00 | 3 months |
| **AUG** | 8/25/2016 | $6,832.22 | 10/25/2016 | 82539 | $6,832.22 | 2 months |
| **SETP** | | | | | | |
| **OCT** | | | | | | |
| **NOV** | 11/25/2016 | $651.51 | 2/9/2018 | 85267 | | 15 months |
| **DEC** | 12/5/2016 | $10,000.00 | 2/9/2018 | 85267 | | 14 months |
| | 12/25/2016 | $7,207.38 | 2/9/2018 | 85267 | | 14 months |
| **2017 JAN** | 1/25/2017 | $5,562.68 | 2/9/2018 | 85267 | | 13 months |
| | 1/25/2017 | $17,063.12 | 2/9/2018 | 85267 | $40,484.69 | 13 months |
| **FEB** | | | | | | |
| **MARCH** | | | | | | |
| **APRIL** | | | | | | |
| **MAY** | | | | | | |
| **JUNE** | 6/25/2017 | $8,629.33 | 7/6/2018 | 86120 | | 11 months |
| **JULY** | 7/25/2017 | $4,683.94 | 7/6/2018 | 86120 | | 12 months |
| **AUG** | | | | | | |
| **SEPT** | 9/13/2017 | $6,438.86 | 7/6/2018 | 86120 | | 10 months |
| **OCT** | 10/5/2017 | $7,059.49 | 7/6/2018 | 86120 | | 9 months |
| **NOV** | | | | | | |
| **DEC** | 12/8/2017 | $10,000.00 | 7/6/2018 | 86120 | | 7 months |
| **2018 JAN** | 1/3/2018 | $3,880.71 | 7/6/2018 | 86120 | $40,692.33 | 6 months |
| **FEB** | 2/13/2018 | $6,030.29 | 4/15/2019 | 87607 | | 14 months |
| **MARCH** | 3/6/2018 | $4,563.81 | 4/15/2019 | 87607 | | 13 months |
| **APRIL** | 4/5/2018 | $9,271.34 | 4/15/2019 | 87607 | | 12 months |
| **MAY** | 5/10/2018 | $2,830.28 | 4/15/2019 | 87607 | | 11 months |
| **JUNE** | 6/11/2018 | $2,935.64 | 4/15/2019 | 87607 | | 10 months |
| **JULY** | 7/6/2018 | $100.00 | 4/15/2019 | 87607 | | 9 months |
| | 7/9/2018 | $4,157.66 | 4/15/2019 | 87607 | | 9 months |
| **AUG** | | | | | | |
| **SEPT** | | | | | | |
| **OCT** | 10/8/2018 | $170.30 | 4/15/2019 | 87607 | | 6 months |
| **NOV** | | | | | | |
| **DEC** | 12/7/2018 | $10,000.00 | 4/15/2019 | 87607 | | 4 months |
| | 12/13/2018 | $1,894.87 | 4/15/2019 | 87607 | | 4 months |
| | 12/31/2018 | $7,887.76 | 4/15/2019 | 87607 | $49,841.95 | 4 months |
| **2019 JAN** | | | | | | |
| **FEB** | | | | | | |
| **MARCH** | | | | | | |
| **APRIL** | | | | | | |
| **MAY** | | | | | | |
| **JUNE** | BANKRUPTCY FILED | | | | | |